We'll move on to American Trucking and Transportation vs. Liberty Mutual Insurance, 181186 and 181351. Good morning, Your Honor. My name is James Callan, representing the appellant across, I believe, American Trucking and Transportation Insurance Company, RRG. I was also, I also represented Attic in the proceedings below. Attic would suggest to the Court that the context of this dispute is very important in determining the many issues in it. And the context is that this is a dispute between two insurance companies, not a dispute between an insurance company and its insured. This is particularly germane to the issues of contra-preferendum that have been raised here. Ambiguity in whether or not it should be construed in favor of peerless seeking reimbursement for indemnification of its insured. The Montana cases, particularly the 1968 Montana Supreme Court case referred to as Redding in the briefs, makes it very clear that if there's an ambiguity, it should not be construed against the insurer in favor of a stranger to the policy, an entity that had nothing to do with the formation or negotiation of the policy. In this case, that's peerless. There's no reason that any ambiguity that the district court may have found or not should inure to their benefit. Peerless relied on a Montana case, Swank, with respect to the doctrine of contra-preferendum. That case is distinguishable but noteworthy. It's distinguishable because in that case, the court found the ambiguity in favor of designated additional insureds, people named in the policy, not strangers to the policy. But it's noteworthy that Swank also stated as a matter of law that the phrase the named insured, which applies to this case, created an ambiguity. One of the inconsistencies this court has to deal with, or should deal with rather, with respect to the district court's opinion below, is the inconsistency that early in the opinion, it concluded that any ambiguity should be construed in favor of addict, yet when it came to the issue of late notice, said that addict would not prevail on late notice because the policy says late notice from the named insured, it's inconsistent. Either the named insured provision is an ambiguity to be construed in favor of addict or not. It wouldn't apply to separate provisions of the policy. More importantly, the late notice issue in this case, the late notice of claim four years after the accident, weeks before trial, when a mediation had already been scheduled, should be dispositive of all issues in this appeal. The court below dismissed the notion that addict was prejudiced by a four-year delay here in getting notice, getting involved on the eve of trial. The reason I make that distinction is, as I stand here today, addict has never received notice from either peerless or its insured. The notice it received . . . I'm a little puzzled by something. The proposition that the notice must come from the named insured makes a lot of sense because, as it's stated, because when the person giving notice is somebody who incidentally becomes within the coverage of the policy because of factors that come into play but is not a contracting party, how is that person supposed to know about what the policy provides about giving notice? Your Honor . . . Valley Stream didn't have this policy. Valley Stream and its insurer weren't named insureds and they weren't contracting parties. To say that they're supposed to know what the policy that addict rendered to its insured provides about notice seems to me bizarre. However, Your Honor, both Montana law and New York hold. Looking at it from the terms of the separability of coverage that a permissive user is treated as if it were his own policy or her own policy, included in that is compliance with all conditions preceding to coverage in the policy. Both Montana law and New York law are, I think, full of cases that the additional insured's obligations to the insurer to provide notice are the same as a named insured. The issue of how would they know who to contact, generally the way that happens is counsel in a litigation or the insurance company, as in this case Peerless, could have easily looked on the Department of Transportation's Safer site, which lists every trucking company that's registered and who insures them. There's no reason for any doubt about who insured Watkins and Shepard addicts insured. Thus, the policy explicitly states that notice is to be given by the named insured in this fashion. Yes. But again, the named insured relying on the swank case has already been construed as an ambiguity in the policy, and given that Peerless is a stranger to the policy, that ambiguity should not inure to their benefit. The notion of notice . . . I'm sorry, Your Honor. Finish answering Judge LaValle, please, and then I have a question. With respect to the facts of notice in this case, the only notice provided of this claim in terms of a tender of the defense and indemnification was to addicts insured, Watkins and Shepard, by a fairly typical insurance company tender letter saying, we look to you for coverage. Please turn this over to your liability carrier. That letter proves a number of things. One, that Peerless and its insured had no idea who that carrier was at the time. They hadn't done the research as I suggested, simply looking on the web as to what carrier covers this trucking company. In addition to which, the letter is addressed to gentlemen at Watkins and Shepard Trucking. Peerless and its papers below, and the district court seemed to accept that argument, maintained that notice of the claim to addicts insured was notice to addict. That's contrary to insurance coverage law throughout the land. If notice had been, and I'm sorry, this is along the same line, Judge Kaplan, but if notice had been given earlier, what would you have done differently? It would depend on how much earlier, Your Honor, but if it were timely notice, more than likely the addict would have had the opportunity to investigate not only the underlying case and provide a defense, but also to investigate its own coverage claims. Is this person entitled to coverage? If the investigation showed that they were properly a permissive user and had given them timely notice, then the next analysis would be, are there any exclusions in the policy that would prevent coverage? One of those, which is applicable, and was the subject of the 2015 District of Montana decision on this very policy and this very insured one year earlier, but as to the same exclusion, the workers' compensation and employers' . . . Did you identify for the district court any steps that you would have taken, these steps for example, that you would have taken that were different from the steps? Your Honor, addict had no opportunity to take any of those steps. After four years, literally they were informed there's a mediation that's going to take place in a couple of weeks, and trials, I think six or eight weeks out, show up with a checkbook. You know, your position really boils down to, as I see it, that timely notice and prejudice rule, which applies in Montana, really means only timely notice, because anytime notice is untimely, the insurance company is always in a position to say, well, if we had learned earlier, we could have done more, without specifying anything. But my understanding of the Montana cases is you actually have to prove prejudice. Isn't that true? Yes, it is. What precisely was not done, by virtue of the notice coming when it did, that would have been done had the notice been given earlier? What's the support and the record for it? And I might say to you that, you know, in the dim memories of the past, long before I was here, I went to trial in a Section 7 antitrust case six weeks after I got notice that we'd been sued. It can be done. You could have investigated this claim. Whether or not it can be done is not the definition of prejudice, Your Honor. You may have prevailed and done what you had to do to represent your client. That doesn't mean your client wasn't prejudiced by that delay. In this specific case, in addition to Mr. Harvey Mensch's testimony, Harvey Mensch is an executive. He didn't help you any on this point, did he? I think he did. Really? He said a number of things. He testified that the lack of notice prevented him from doing due diligence with respect to not only the coverage, but the investigation. He testified that in a moment's notice, he had ... Stop for a minute. I'm sorry. That's buzzwords. Due diligence? Where was he in the eight weeks? What was he doing? What couldn't he do in the eight weeks? Your Honor ... He didn't say any of that. And what he did say, as I read the record, is that what you would have done if you had earlier notice is you would have refused to indemnify anyway. So, their coverage determination has nothing to do with whether or not they were prejudiced with respect to the underlying case. For four years, Peerless had, or at least for two years from the commencement of the action, Peerless had assigned defense counsel, conducted depositions, conducted written discovery, retained experts, prepared for trial, and then turned to Addick and said, here, you take this. How many depositions were conducted? In the case below? Yeah. I don't know that, Your Honor. How many documents were produced? I don't know that. I didn't have the opportunity to know that. Was it unreasonable to prove that the time available to you was inadequate to review that material and, indeed, to go beyond it? Yes, Your Honor. I think also in the record is Mr. Minch's testimony that once they were informed by actually a Liberty Mutual representative that the mediation had been scheduled, Addick scrambled to assign a defense attorney. In assuming the defense and reserving its rights to deny, it had to assign defense counsel, which it did, who had literally days to prepare for the mediation, to say nothing of the trial, and had to get in touch with Peerless and its defense counsel to ask for a copy of the file. Now, Mr. Minch testified that he didn't even receive a copy of the underlying complaint until defense counsel had been assigned to attend the mediation to see is this mediation going to result in a reasonable settlement. He literally did not have the pleadings. Would you just very briefly address the issue of prejudgment interest? Surely, Your Honor. I think it's a fairly simple calculus that the rate of interest applicable to prejudgment interest is dependent on the law of the state that determines liability. In this case, if Addick were to prevail based upon construction of the policy under Montana law, we believe that Montana's 10 percent interest rate for prejudgment interest would apply. If, on the other hand, the court accepted that despite the Liability Risk Retention Act that these very specific New York insurance regulations on which Peerless relies caused them to prevail, then it would be New York's insurance rate at 9 percent. Let me ask you one more question, if I may. Surely, Your Honor. The Montana Supreme Court accepts certified questions, doesn't it? I believe it does, Your Honor. Couldn't we certify the Montana law issues to Montana? Well, Your Honor, I think that all of the federal courts under the Erie Doctrine certainly have the capacity and the power to construe the law of the relevant states without certifying every question. You certainly could. Yeah, but here on the issue of notice, you have a whole, at least notice, a whole group of sub-issues that raise questions of Montana law that might best be resolved there. For example, is Mr. Mench's saying I could do more due diligence if I had more time a Montana? You've got the issue of whether the notice was timely in the first place, an issue of Montana law, and there are others. Your Honor, I think that the . . . First of all, I must take issue with the quantum of evidence in terms of sworn testimony from Mr. Mench that you see. There was more than that statement. I think we need to say a little more than that about that. But in terms of the Montana law having to do with late notice, the Steadley case that we cited in the brief, the court found that a five-month delay was sufficient to deny  Well, but that's . . . Compared to four years, Your Honor? It didn't just say that a five-month delay was presumptively sufficient. It said more. And moreover, New York has a presumption of prejudice after two years' delay. Montana has no such statute of which I'm aware. No, Your Honor, I simply suggest that looking at the body of Montana case law dealing with late notice, I believe that the record in this case would be sufficient to prove prejudice when confronted with a case that's been going on for four years, a few weeks before trial, and handed the ball, not by an insured, but by another insurance company seeking to be reimbursed for its indemnification of its insured after taking its insured's premiums. Just one or two notes, if I have any remaining time, Your Honor. We can hear about you in rebuttal. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, my name is Marshall Petashner, attorney for Appellee's Cross Appellants. First I want to say that as far as context is concerned, whether or not Attico's insurance coverage doesn't depend on whether there's other insurance coverage. There's no law to support that. Going to the timing and the prejudice issue, just to address some of the issues raised by my adversary, and actually the timing was, it was in August when they admit they received notice. The mediation did not occur until, and it's in the record at A400 is the mediation statement, February 3rd of the following year. So that's five plus months. So it was in a couple weeks. A lot could be done in five plus months. Second, I would like to point out that prior to that, the first statement we got was a letter from Rawls and Henderson on behalf of Attic denying coverage. The letter, they deny that they denied coverage, but when you read the letter, particularly on page A124, it says, the underlying plaintiff, Muhammad Ture, was an employee of Attic's and thus, and it's short at the time of the accident, such that the policy does not provide coverage to House of Carpets for Ture's alleged injury. They denied coverage. When you deny coverage, you don't get to control the defense and there's no anticipation you're going to pay. In fact, they refused to pay. I will note that they have conceded that both the settlement was reasonable and the defense cost amounts are reasonable. So where is the prejudice there? I'll come back some more. What's the significance of the fact that they denied coverage? Well, if they denied coverage, they're saying, well, we would have done this, we would have done that. What's the difference if they weren't going to pay and deny coverage? They already denied coverage. Many states, New Jersey, one of them has case law, for example. As a matter of law, you can't show prejudice when you were denying coverage on the merits anyway. It's a different standard for duty to defend and denial of coverage, isn't it? Right. But they don't get to control the defense. When you deny like that, at best, they are obligated to pay for the defense. They don't get to put their own attorneys in and they don't get to control the defense. And in fact, they haven't showed any prejudice. Their vice president admitted that he wouldn't have done anything different. He would not have paid anyway. What's your position on the sufficiency of Mench's testimony claiming prejudice? Well, again, that's conclusory. When you get to the facts, he was asked, would he have paid? Would he have done anything different? He was actually asked, was he prejudiced on the duty to indemnify? And he said no. I understand that, but questions such as what additional work he would have done, if any, in respect of the mediation, in respect of getting up to speed for trial? Right, but what's the purpose of getting up to speed from the trial if you're denying coverage anyway? And by the way, he had plenty of time. Again, it was five months. He didn't have the right to control the defense at the trial because he was denying coverage. So when he says, when he talks about he didn't do his due diligence, he doesn't explain what due diligence he would have done that would have had any actual effect on anything. How extensive was the record in the underlying case? How many depositions? How many documents? Your Honor, all I know is the case was ready for trial. I don't know how extensive the record was. Pretty simple case, right? Yes. I'm assuming there was depositions of the plaintiff and the defendants, but sitting here today off my memory, I don't know. It was all available, for example, in this case through discovery if they wanted to use that to show prejudice. Remember, they had the burden in opposing summary judgment. They didn't even submit any fact affidavits. They just relied on attorney arguments. And what Mr. Mensch said, and what Mr. Mensch said was, he would have denied anyway. Just to address, I'd like to address some of the other more substantive issues. This case is not about ADEC being regulated by New York. It's about Watkins being regulated by New York and New York's requirements when Watkins drives its trucks in New York. And it's also about ADEC's contractual agreement to provide the coverages required by Watkins to operate at vehicles in New York. In fact, there's an admission by, again, Mr. Mensch, that ADEC agreed to provide the coverages required by Watkins when operating the vehicles in New York. And this is done through their coverage conformance provision. And in fact, there's two admissions in their briefs. In this case, in ADEC's response reply brief, they state, quote, peerless is correct, that ADEC's contractually agreed to provide its insured types and insurance coverage required by New York if the insured used a covered trucking unit in New York. Here, the truck was being used in New York. New York only allows the nower employee's liability exclusion. Now they say, well, Montana construes that differently. But when you're construing what New York requires, and its regulations, and its statute, you look at New York law. And there's no doubt under New York law that the insured means the insured seeking coverage. And here, and particularly where there's a separation of insurance provision, like there is in this case, it doesn't apply. In fact, it's not even contested that under New York law, that regulation does not allow this type of exclusion. Why shouldn't we interpret the contract in accordance with its words to say that the insurance provided by ADEC to the named insured does not apply to the following? That was my next argument. And this is the Swank case. And this is the one place where the court below erred in two cases. One place where the court erred, and I don't think it's ambiguous, by the way. It's not ambiguous. It's very clear. It talks about exclusions provided by ADEC to the named insured. It doesn't say any insured, it doesn't say an insured, it doesn't even say the insured. This is to the named insured. There's no ambiguity here. All the bullet point exclusions, which they rely on, that fall below that, do not apply to additional insureds. You didn't have to say anything. You could just say the trucking liability insurance does not apply to the following. But it didn't say that, it said to the named insured. Right, and what the court erred, the district court erred, the court held, well, you can't have a policy which provides more coverage to an additional insured than a named insured. And that's just a pure error of law. The Montana Supreme Court, in that Swank Enterprises case, specifically construed, in that case, ambiguous language. Here, I don't think it's ambiguous at all. The court didn't cite, wasn't apparently aware of Swank in making that point, is that right? Well, we cited it. The court didn't- Didn't refer to it. No. We cited it and we discussed it, but the court didn't refer to it. So Swank clearly makes clear two things. One, you can have more coverage for an additional insured. And this is the Supreme Court of Montana's talking. And two, I don't agree with the way it's being distinguished. It's not clear whether or not the additional insureds, like normal, are not named, but are just identified by what they do, or whether they're actually typed into the policy. It just says they're identified. Here, Valley Stream is identified as an additional insured as a user of the vehicle. There's no dispute they qualify as an insured based upon identification. When you look at the, in fact, the appellate brief by Attic when they ask the questions, whether they're an insured or not is not one of the questions before this court. So yeah, I was going to get, thank you, Your Honor, I was going to get to that point next. As far as- It's the same with respect to the notice. The notice provision reads the same way. Yes, and in fact, in 2012, when the letter was sent, and the court relied on this in part, when you look at the policy, it gives the name of a person to send the notice to, Jesse Ellison. There's no dispute that the 2012 letter, while it wasn't addressed to Jesse Ellison, sometimes there's luck. He received it. He responded shortly thereafter in 2012. So that's on page A54 of the record. They list Jesse Ellison as the person to receive notice. Now, I think it's important is the relationship between Attic and Watkins here. Watkins is the majority owner of Attic. Their employees go in and out of Attic. Jesse Ellison at one time was a counsel for Attic. He moved to counsel for Watkins. And in fact, his boss at the time was a director of Attic. So the notice was received as set forth in this specific policy by Jesse Ellison. But even if not, even if you forget that, there is no prejudice here. Because of, again, they denied coverage. They had five months to prepare for the mediation. We don't even need to get into prejudice if we read the policy to mean what it says. Exactly, and that's both what Montana and New York would do. And just on that point, one thing to note, it also makes sense that Watkins provides the notice because this policy only covers covered trucking units. A covered trucking unit is a Watkins truck. So Watkins, by its nature, would know of any accidents. And that's maybe one of the reasons why it was set up this way, that Watkins provides the notice. As far as the interest rate, we never argued that this is a New York contract. What we argued, this is a Montana contract whereby they agreed, through the coverage conformance provision, to provide the coverages required of New York. So when you look at what coverages are required in New York, you do look at New York law. But when you look at whether or not there was a breach of this contract and what law governs the contract, it's Montana law. And it should have been 10%, which is undisputed. And the Swank case actually addresses that, too. It's a case that has a lot, that it's not discretionary. It's 10%, and that's what it should have been, the interest rate. We agree with you on the underlying issue. We should send it back for reconsideration of the rate under Montana law, which is 10%. Right, Your Honor. Unless Your Honors have any further questions, I rely on my brief for the remainder of my arguments. Thank you. Thank you. Thank you, Your Honor. I just want to clarify one or two things. You just heard counsel say that EDIC denied coverage. EDIC has not denied coverage since day one of this issue, including today. The record contains a reservation of rights letter, at which point EDIC chose to assume the defense and have the courts deal with the duties and obligations of the parties. They've never denied coverage. As in any reservation of rights letter, you have to articulate not only the provision of the policy, but what that means to the insurer or the person you're putting on notice of the reservation of rights. That includes pointing out an exclusion provision on which basis coverage may be denied. That is a reservation of rights letter. If we had denied coverage, we wouldn't have done anything to assume the defense or to reimburse peerless for the defense costs it had already paid. We did jump in, ready to assume the defense. It just turned out the mediation was in a matter of days, and the matter was disposed of. Now, with respect to evidence of the policy's contents from Mr. Minch's testimony, this is an executive from Montana, questioned during this case about whether or not an owner's policy of liability insurance would provide what New York requires under a, quote, owner's policy of liability insurance, which is a term of art under New York insurance regulations. Council did not advise the deponent that that is a term of art under New York insurance regulations. To any person coast to coast, if you asked them about an owner's policy of liability insurance, you wouldn't attach special meaning to it any more than if he'd been asked about a picnic table. Everyone knows what that is. Owner's policy of liability insurance. What he did not advise Mr. Minch was that that had a particular meaning within New York insurance regulation. Well, but Mr. Minch was a 30B6 witness, right? Correct. You're bound by him, aren't you, under Rule 30B6? Bound by his testimony? Yes. Yes, but even if it's his testimony, it's still parole evidence with respect to the interpretation of a contract. Mr. Minch's understanding of the contents of the contract don't control how this court construes it. Just one or two other things, if I have a moment left here. You don't, but I'll take one thing. How about one thing? Okay. Counsel, in his papers for Peerless, asserted that ADEC had waived certain coverage defenses because it asserted one of them. That's just not how coverage law works. It just doesn't. In the Reservation of Rights letter, we informed Peerless and its insured of every basis on which we might deny coverage. We waived nothing, and the case law cited in Peerless' brief is inapposite on that score.